## UNITED STATES *v.* CLAYPOOL.

*District Court, W. D. Missouri, W. D.* September Term, 1882.

1. CRIMINAL LAW—OBSTRUCTING MAILS—"KNOWINGLY AND WILLFULLY."

In the act of congress defining the crime of obstructing the passage of the mail, the terms "knowingly and willfully" are intended to signify that at the time of committing the offense defendant must have known what he was doing, and with such knowledge proceeded to commit the offense charged, and are used in the statute in contradistinction to innocent, ignorant, or unintentional.

2. SAME—"PASSAGE OF THE MAILS."

By the terms "passage of the mails" are meant the transmission of mail matter from the time the same is deposited in a place designated by law or by the rules of the post-office department up to the time the same is delivered to the person to whom it is addressed.

3. SAME—OFFENSE CONSTRUED.

Mail matter in the post-office, ready for delivery, and there for that purpose, is on its passage, within the meaning of the law, and to interfere with it so as to obstruct and retard its delivery is an offense.

4. SAME.

Where a party commits an unprovoked assault upon a postmaster, the necessary result whereof was an obstruction and retarding of the passage of the mail, the law presumes that the defendant intended by his act the result which followed, and the offense is complete; but it is otherwise if the act was independent and disconnected from the post-office, and matters pertaining thereto.

5. SAME—DRUNKENNESS NO EXCUSE FOR CRIME.

Drunkenness is no excuse for crime, and in the instances in which it is resorted to to blunt moral responsibility, it heightens the culpability of the offender.

Indictment for Obstructing the Passage of the Mail.

*Mr. Warner,* Dist. Atty., for the United States.

*Mr. Phelps,* for defendant.

KREKEL, D. J., (*charging jury.*) The post-office department, under the law, has established a post-office in the town of Higginsville, in Lafayette county, in the western division of the western district of Missouri, and John W. Enly has been appointed, and was, on the

twenty-eighth day of August last, postmaster of that office. The indictment in this case charges that on said day, while Enly, the postmaster, was in the discharge of his duties as such postmaster and in his office, the defendant Claypool knowingly and willfully obstructed and retarded the passage of the mails in his charge, thereby committing the offense for which he is upon trial. The terms "knowingly and willfully," employed in the law and in the indictment, have the common and usual meaning attached to them, and are intended to signify that defendant, Claypool, at the time of committing the offense charged against him, must have known what he was doing, and that with such knowledge he proceeded to commit the violations of law with which he is charged. The act of congress under which the indictment has been drawn reads as follows:

"Any person who shall knowingly and willfully obstruct or retard the passage of the mail, or any carriage, horse, driver, or carrier carrying the same, shall for every such an offense be punishable by a fine of not more than $100."

The offense here denounced is the knowing and willful obstructing of the passage of the mail. I have already spoken of the meaning of the terms "knowingly and willfully," and add by way of further explanation that they are used in contradistinction to innocent, ignorant, or unintentional; so that defendant, Claypool, by the acts he did, may have obstructed and retarded the mail in its passage, yet he is not guilty under the law if he did it innocently and without intending to do so. There is a distinction between the act of obstructing done while in pursuit of a legitimate or innocent object, and being done while committing an unlawful act. This distinction has been clearly pointed out by the supreme court of the United States in the case against one *Kirby*, 7 Wall. 482, and I present it to you in the language of Justice FIELD, who delivered the opinion of the court:

" The statute of congress, by its terms, applies only to persons who ' knowingly and willfully ' obstruct or retard the passage of the mail or of its carrier; that is, to those who know that the acts performed will have that effect, and perform them with the intention that such shall be their operation. When the acts which create the obstruction are in themselves unlawful, the intention to obstruct will be imputed to their author, although the attainment of other ends may have been its primary object."

As to this branch of the case, with so clear and pointed exposition of the law, you can have no difficulty in its application to the facts of the case you are to determine.

I pass to the definition of the terms "passage of the mail" and their meaning. The provision of the law as read, found in the revision of

the laws of the United States of 1878, are taken from the law of 1825, where they are found in different connections from those in the Revised Statutes. Without stopping to point out how statutes in their construction are sometimes affected by their connection, I instruct you that by the terms "passage of the mails" are meant the transmission of mail matter from the time the same is deposited in a place designated by law or the rules of the post-office department up to the time the same is delivered to those to whom it is addressed. I incline to this view because without such a construction the mail matter in post-offices has but a limited protection by law, and because a larger and complete protection is certainly within the spirit of the law. The argument of legislative intent must yield to the necessity of the case, and is anticipated by provisions of law. St. 1878, (Rev. St. § 5600.) Applying this construction of the law, as here given, to the case in hand, you are directed that if you shall find from the evidence that the acts done and committed by the defendant, Claypool, obstructed or retarded the receiving or delivery of mail matter at the post-office at Higginsville, as charged in the indictment, you may find the defendant guilty so far as this branch of the case is concerned. Mail matter in the Higginsville post-office, (at the time of the alleged interference by Claypool,) ready for delivery, and there for that purpose, was on its passage within the meaning of the law, and to have interfered with it so as to obstruct and retard its delivery is an offense.

It remains to be seen how far an interference with the postmaster is a knowing and willful interference with the passage of the mail, so as to obstruct and retard it. Upon this branch of the case you are instructed that if you shall find from the evidence that Enly, the postmaster, on the afternoon of the twenty-eighth day of August, went from the place in the room where the post-office is located to the door for the purpose of inviting or inducing the personal encounter which then followed, he must bear the consequences; and it makes no difference whether he happened to be a postmaster. If the postmaster or his postmastership had no connection with the difficulty between him (Enly) and Claypool, defendant, but was independent and disconnected from the post-office and matters pertaining thereto, you are authorized, on such a conclusion being arrived at by you from the testimony, to find the defendant not guilty. But, on the other hand, if you shall find from the testimony that Claypool committed an unprovoked assault upon Enly, the postmaster, and the necessary result

v.14,no.3—9

thereof was an obstruction and retarding of the passage of the mail, the law presumes that by his act Claypool intended the result which followed; and you may, upon arriving at such a conclusion, find the defendant guilty.

Under any view taken of the case, an obstruction or retarding of the mail must have been the consequence of and followed from Claypool's acts. Drunkenness is no excuse for crime, and, in the instances in which it is resorted to, to blunt moral responsibility, it heightens the culpability of the offender.