**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Johnnie Beatrice HALL, Defendant-Appellant.**

**No. 79–137–Cr–J–HES.**

United States District Court, M. D. Florida, Jacksonville Division.

Sept. 22, 1980.

On Petition for Rehearing Oct. 21, 1980.

Gary L. Betz, U. S. Atty., Russell W. LaPeer, Sp. Asst. U. S. Atty., Jacksonville, Fla., for the Government.

Raymond E. Makowski, Jacksonville, Fla., for defendant-appellant.

## OPINION

MELTON, District Judge.

This cause is before the Court on the appeal of Johnnie Beatrice Hall from her

conviction before the United States Magistrate. Appellant Hall was convicted on February 4, 1980, of one count of knowingly and willfully obstructing the passage of the mail, in violation of 18 U.S.C. § 1701.[1] Specifically, the information alleged that Hall obstructed the passage of the mail by having in her possession a United States Treasury check payable to one Annie B. Gillson.

The facts adduced at the trial before the magistrate are largely undisputed. The appellant had for a number of years resided with her great-grandmother, Annie Gillson, sharing household responsibilities and financial resources. The appellant testified that her great-grandmother, who was eighty years old and suffered from arthritis, had in the past given the appellant her consent to cash her monthly social security checks. On February 28, 1978, Annie Gillson died of injuries sustained when her home burned. Unaware of Gillson's death, the Social Security Administration routinely mailed to her on February 28, 1978, a check in the amount of $198.70 which represented the Social Security benefit she had been receiving each month.

The evidence presented at trial further established that the appellant took the check from the envelope in which it had been mailed and enlisted the aid of a friend, Sam Flood, to help her cash it. Flood testified that he accompanied the appellant to the Forest Pharmacy, where she endorsed the check by signing Annie Gillson's name. Because the appellant did not have any identification with her, Flood assisted her in cashing the check by using his own identification and by endorsing the check with his signature. The proprietor of the pharmacy, David Weinstein, testified that he cashed the check for the appellant, relying upon the identification and endorsement of Sam Flood. Both Flood and Weinstein testified that the appellant told them the check was hers, although she denied doing so. On an undetermined date subsequent to the cashing of the check, the appellant advised the Social Security Administration that Annie

1. The appellant was adjudicated guilty but imposition of sentence was withheld.

Gillson had died. Consequently, no other checks were mailed to her.

The appellant raises two issues in her appeal. She first argues that the government failed to prove that the passage of the mail was obstructed or retarded. She then argues that even if the government did prove that she obstructed the mail, it nevertheless failed to prove that she did so knowingly and willfully.

▓▓▓▓ The elements of the offense stated in 18 U.S.C. § 1701 are (1) obstructing or retarding (2) the passage of mail (3) knowingly and willfully. *United States v. Fleming*, 479 F.2d 56, 57 (10th Cir. 1973); *United States v. Del Monte*, 470 F.Supp. 248, 249 (D.Mass.1979); *United States v. Takacs*, 344 F.Supp. 947, 948 (W.D.Okl.1972). The appellant's contention that the government failed to prove that the passage of mail was obstructed is based upon her argument that because the check in question was delivered to the proper address at which she lawfully resided, it was no longer in the passage of mail and therefore obstruction was impossible. In so arguing, however, the appellant misconstrues the meaning of the phrase "passage of the mail." That phrase has been uniformly defined as meaning the transmission of mail matter from the time the same is deposited in a place designated by law or by the rules of the postal service up to the time the same is physically delivered *to the person to whom it is addressed. United States v. Claypool*, 14 F. 127 (W.D. Mo.1882). *Accord, United States v. Johnson*, 620 F.2d 413, 415 (4th Cir. 1980); *United States v. Lavin*, 567 F.2d 579 (3d Cir. 1977); *United States v. Fleming, supra* at 57; *United States v. Del Monte, supra* at 249; *United States v. Takacs, supra* at 949. Thus, even though the item of mail in the instant case was delivered to the proper address, it nonetheless remained in the passage of mail because it had not reached the addressee—Annie Gillson. Moreover, the Court notes that because the addressee of the letter containing the check was deceased at the time of the letter's arrival, the letter would have remained in the passage of mail until such time as it was returned to its sender. In this respect, the Court need not decide whether the appellant had any affirmative obligation or duty to return the letter—the Court is satisfied that the appellant's action in taking the letter into her personal possession, opening it, and converting the contents thereof to her own use constituted an obstruction of the mail within the meaning of 18 U.S.C. § 1701.

▓▓▓▓ The appellant's argument that the government failed to prove that she had the requisite intent to obstruct the mail is likewise without merit. The evidence of appellant's specific intent, although circumstantial, is compelling. As the appellant admitted, both at trial and earlier to a Secret Service Agent, she took a check which she knew belonged to her great-grandmother, and endorsed and cashed it at a time when she knew her great-grandmother was dead.[2] Although she may have once had authority to sign and cash such checks for her great-grandmother in the past, her actions with respect to the check in question negate an innocent state of mind: she took the check to a place which the record reflects she had never before gone to cash any other checks; she enlisted the aid of Sam Flood, whom she had never before involved in cashing her great-grandmother's checks; she did not tell either Mr. Flood or Mr. Weinstein at the pharmacy that the check belonged to her great-grandmother—as they both testified, she affirmatively mislead them by telling them that the check was her own, and finally, the appellant forged the name of her deceased great-grandmother on the back of the check.

▓▓▓▓ The specific intent element of the instant offense is a question of fact generally provable circumstantially and inferentially. *United States v. Fleming, supra* at 57. The Court is satisfied that the magistrate, as the trier of fact, properly drew from the ample factual circumstances that the appellant possessed the requisite specific intent.

2. Record, at 24–25, 40–43.

■ On appeal, this Court must view the evidence adduced at trial and all reasonable inferences drawn therefrom in the light most favorable to the government. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Hawkins*, 614 F.2d 85, 87 (5th Cir. 1980). With this standard in mind, the Court finds the evidence presented at appellant's trial to be sufficient for the magistrate, as the trier of fact, to reasonably, logically, and legally infer from the evidence that the appellant was guilty beyond a reasonable doubt of knowingly and willfully obstructing the passage of the mail. *See United States v. Habel*, 613 F.2d 1321, 1324 (5th Cir. 1980); *United States v. Littrell*, 574 F.2d 828 (5th Cir. 1978). Accordingly, the conviction of Johnnie Beatrice Hall is hereby AFFIRMED.

## ON PETITION FOR REHEARING

The appellant has moved the Court for a rehearing, seeking to have the Court reconsider its order of September 22, 1980, in which the Court affirmed her conviction before the United States Magistrate of a violation of 18 U.S.C. § 1701.

■ The Court has carefully considered appellant's petition, together with the government's response thereto. Upon such consideration, the Court is satisfied that, for the reasons set forth in the government's response (a copy of which is appended to this order), its order affirming the appellant's conviction is legally sound.

Accordingly, it is hereby

ADJUDGED:

That appellant's Petition for a Rehearing is denied.

## APPENDIX

### RESPONSE TO DEFENDANT–APPELLANT'S PETITION FOR REHEARING

On September 22, 1980, the Court issued an Order affirming the conviction of the defendant in this case. Two days later, on September 24, 1980, the defendant-appellant filed a petition seeking the Court to reconsider its Order of affirmance, on the grounds that the Court "may have overlooked or misapprehended" two points of law and fact.

### I. TIMELINESS OF SOCIAL SECURITY CHECKS

The first ground that defendant-appellant raises, in requesting the Court to reconsider its Order affirming her conviction, is that if (as the Secret Service Special Agent testified at trial) social security checks are paid in arrears, then defendant's great grandmother may well have been entitled to the social security check dated March 3, 1978, even though she had died in February, 1978. The short answer to that ground is that it is completely irrelevant to the offense for which the defendant was charged and convicted.

Defendant was charged with violating Title 18, U.S.C., § 1701 (1976), which makes it unlawful to retard or obstruct the passage of the mail with the specific intent (i. e., knowingly and willfully). It is conduct which retards or obstructs the passage of the mail, from the time that it is deposited in a place designated by law or postal regulations, up to the time that it is physically delivered to the person to whom it is addressed. *United States v. Johnson*, 620 F.2d 413, 415 (4th Cir. 1980); *United States v. Lavin*, 567 F.2d 579, 581 (3rd Cir. 1977); *United States v. Fleming*, 479 F.2d 56, 57 (10th Cir. 1973); *United States v. Claypool*, 14 F. 127 (W.D.Mo.1882); *United States v. Del Monte*, 470 F.Supp. 248, 249 (D.Mass. 1979); *United States v. Takacs*, 344 F.Supp. 947, 949 (W.D.Okl.1972). This Court correctly followed those decisions in interpreting the phrase 'passage of the mail,' for purposes of understanding the offense prohibited: namely, obstructing or retarding the passage of the mail.

If defendant had been charged with obtaining social security benefits by means of false or fraudulent claims (e. g., 18 U.S.C., § 287), then the question of when her great-grandmother became entitled to the check

dated March 3, 1978, would be highly relevant. But the elements that comprise the offense of obstructing or retarding the passage of the mail, with a specific intent to do so, prohibit such conduct whether or not the addressee-recipient would be lawfully entitled to receive the item placed in the stream of postal transmission. Regardless of when the entitlement to that March 3, 1978 check accrued, or the period of time that it was intended to cover, once it was placed in the passage of the mail, Title 18, U.S.C., § 1701 prohibited defendant from obstructing or retarding that check.

## II. SPECIFIC INTENT TO OBSTRUCT THE PASSAGE OF THE MAIL

Defendant argues that because she is not a lawyer, she could not reasonably be expected to have known that the consent and authority of her great grandmother, to receive, endorse, and cash her great grandmother's social security checks, had terminated when her great grandmother died. In conceding the lack of consent and authority, therefore, defendant focuses squarely upon the issue of intent. That element, of course, is a question of fact, generally provable circumstantially and inferentially, and one which the fact finder is entitled to decide based upon all of the circumstances. *United States v. Fleming*, 479 F.2d at 57. In the Court below, the Magistrate, sitting as trier of fact, believed the testimony of Mr. Flood and Mr. Weinstein, rather than defendant, and concluded that defendant therefore "knew what she was doing and she knew it was wrong." (T. 55). Such findings of fact are conclusive and binding, and not subject to re-examination upon Appellate review, unless they are clearly erroneous. The Magistrate's findings of fact on the question of defendant's specific intent, however, are not clearly erroneous, because they are based upon, and drawn from, ample factual circumstances and testimony.

Moreover, the fact finder is always to apply practical, common sense in everyday understanding to the questions of fact presented. In this case, it's simply unreasonable to believe that, under the circumstances, defendant did not know that she no longer had her great grandmother's consent and authority, once her great grandmother had died. Authorization is an affirmative, positive, and expressed consent by a person with a legal right to do something. Such consent is always subject to limitations, and to the right to be withdrawn by the person with the right to give it, restrict it, and terminate it. *Cf. Mason v. Pulliam*, 557 F.2d 426, 428–29 (5th Cir. 1977). Because the existence of authority or consent is always a question of fact, *United States v. Lewis*, 592 F.2d 1282, 1285–87 (5th Cir. 1979), one of the factors that the fact finder considers is whether or not the person giving consent or authorization recognized his right to refuse or rescind that consent or authorization. *Cf. United States v. Juarez*, 573 F.2d 267, 274 (5th Cir. 1978), *cert. denied*, 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978); *United States v. Almand*, 565 F.2d 927, 930 (5th Cir. 1978), *cert. denied*, 439 U.S. 824, 99 S.Ct. 92, 58 L.Ed.2d 116 (1978).

In the present case, once the person able to grant authorization or consent has died, obviously that person is in no position to exercise any kind of restraint upon the scope of consent or authorization, much less to withdraw or rescind it. Consequently, what might ordinarily be a question of fact (the existence of authorization or consent) becomes a question of law for the Court alone, because the death of the person able to grant authorization or consent removes all of the factors to consider the existence of authorization or consent after that person's death. Surely, without going into the legal analysis of the factors bearing upon the existence of authorization or consent, defendant had to know that once her great grandmother had died, she simply was no longer able to understand her rights concerning the granting of authorization or consent, much less to exercise any rights and control over such authorization and consent. For defendant to contend otherwise runs counter to the grain of common sense and everyday experience, regardless of one's sophistication or education.

The Magistrate, therefore, properly concluded that the evidence demonstrated defendant's specific intent to obstruct the passage of the mail, and that defendant knew that she did not have authority or consent to do so. Accordingly, this Court's Order affirming that decision is founded upon a correct understanding of the law, and the proper understanding of the scope of this Court's review of the Magistrate's decision. The petition for rehearing should be denied.