**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Chester Clarence WHITE,
Defendant-Appellant.**

**No. 74–1283.**

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 12, 1974.

Decided Jan. 31, 1975.

J. Terry Wiggens, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty. and Pepe J. Mendez, Denver, Colo., on the brief), for plaintiff-appellee.

Philip M. Jones, Denver, Colo., for defendant-appellant.

Before MURRAH, SETH and HOLLOWAY, Circuit Judges.

MURRAH, Circuit Judge.

The appellant White was convicted on an indictment charging that he "did steal, take and abstract from and out of the mail, and mail receptacle, a letter . . . . and remove from such letter articles and things contained therein, that is [five $5.00 Federal Reserve Notes] . . . . in violation of Title 18, United States Code, Section 1708."[1]

There was direct evidence that federal agents attached a letter to a clothespin on the outside of a mailbox at an apartment house in Denver, Colorado. The clothespin was hooked or fastened to the mailbox lid, and the letter was clipped to the clothespin. The letter contained the notation on the envelope: "Not here. Please forward." While the mailbox was under surveillance, White took the letter from the clothespin attachment and carried it to his own apartment. He later returned and replaced the letter as originally attached and was arrested by the federal agents as he left the apartment house. There was evidence from which the jury could well infer that while the letter was in White's possession he removed the contents, $25 in Federal Reserve Notes.

The evidence shows without dispute that the taking was from the clothespin outside the mailbox. White argues that the evidence is insufficient to convict under the statute and indictment because they require a taking from inside the mailbox; that (1) the words "from" and "out of" each should be taken to mean "from inside,"[2] and (2) the term "mail receptacle" includes only the mailbox, not the clothespin. Consistently, with this theory, he requested the trial court to instruct the jury: "If the letter[3] was taken from the outside of the mailbox and not from inside the mailbox, you must find the Defendant not guilty." Apparently rejecting the theory of the requested instructions, the court instructed the jury in the broader terms of the statute, to the effect that to convict the defendant of the crime charged, they

---

1. 18 U.S.C. § 1708 in pertinent part reads: "Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; . . . .'" shall be punished as provided in the Act.

2. No point is made of the discrepancy between the disjunctive in the statute and instruction ("from or out of") and the conjunctive in the indictment ("from and out of"). The parties made no legal distinction in the uses of these terms and apparently treated them interchangeably. For the purposes of this appeal, we shall do likewise.

3. There is no assertion, as ground for this appeal, that what was taken by White was not a "letter" under § 1708 because used as a decoy letter by federal agents. And see Scott v. United States, 172 U.S. 343, 19 S.Ct. 209, 43 L.Ed. 471 (1899); United States v. Kent, 449 F.2d 751 (5th Cir. 1971); Kelley v. United States, 166 F.2d 343 (9th Cir. 1948).

must find from the evidence beyond a reasonable doubt that White took or abstracted the letter "from or out of a mail receptacle." The court did not undertake to define the critical statutory terms "from or out of a mail receptacle" for the benefit of the jury. But we read the instruction as necessarily telling the jury that the clothespin attached to the mailbox was part of a "mail receptacle" within the meaning of the statute and that a taking therefrom was a violation of the statute as invoked in the indictment. Otherwise, the court should have directed a verdict. We think that this construction of the critical terms of the statute was proper and that the evidence was sufficient to convict on the charge in the indictment.

To support his construction of the critical words, White relies heavily on United States v. Lophansky, 232 F. 297 (E.D. Pa.1916), where the court dismissed a prosecution for mail theft. Applying the rule of strict construction of penal statutes, the court held that taking a letter which had been placed on top of a letter box does not offend the statutory prohibition against taking "from or out of" an "authorized depository" for mail matter.

We, of course, agree that this statute, as all criminal statutes, must be construed strictly against the government. We do not think, however, the ruling in that case should dictate the law of this case. We think there is a significant difference in the taking of a letter from on top of a letter box, as in Lophansky, and the taking of a letter from a clothespin attached to a letter box or mail receptacle, as here. We have found no other case since Lophansky interpreting the critical words involved here, but we are convinced by the reasoning of the more recent decisions, analyzing parallel terms in the statute and regulations, that the ruling in Lophansky should not be perpetuated or extended beyond the narrow confines of its facts.

■ By insisting that the words "from and out of a mail receptacle" should be taken to mean "from inside a mailbox or mail receptacle," White would have us restrict the "mail receptacle" category to include only a mail container or holder which has an enclosed interior. We decline to do so, in view of the manifest legislative intent to protect the mails broadly and the comprehensive definition of the terms of the statute in the implementing regulations.

In Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406 (1918) (a contemporary of Lophansky), the Supreme Court sustained the power of the Postal Service to make regulations to supplement the criminal statute by supplying the detail for the undefined terms of the statute. The applicable regulations have not materially changed since Rosen, and they now provide at 39 C.F.R. 151.1(a):

§ 151.1 Private mail receptacles.

(a) Designation as authorized depository. Every letter box or other receptacle intended or used for the receipt or delivery of mail on any city delivery route . . . or other mail route is designated and authorized depository for mail within the meaning of 18 U.S.C. . . . § 1708.

When the same statute came to the Fifth Circuit in Smith v. United States, 343 F.2d 539 (5th Cir. 1965), the question was whether an unlocked hotel mailbox used for incoming mail only was a "letterbox . . . or other authorized depository for mail matter" within the statute. Judge Wisdom traced the long and colorful history of criminal statutes for the protection of the postal system and the need for "judicial appraisal of the realities of delivering and receiving mail in a modern urban environment." Id. at 542. Relying upon the regulations applicable then and now, he noted that such regulations plainly include "private, unlocked mailboxes, in homes and business establishments, used for delivery but not primarily for collection of mail." Id. at 542–543. While the question there was doubtless more easily resolved than

ours, the reasoning is conducive to a broad and comprehensive definition of a letter box or mail receptacle. See also United States v. Davis, 461 F.2d 83 (5th Cir. 1972); United States v. Holley, 463 F.2d 634 (5th Cir. 1972).

More recently, in United States v. Lopez, 457 F.2d 396 (2d Cir. 1972) the court was concerned with the statutory terms "mail route" and "mail" and construed them in their "broadest sense." Id. at 399. Although each of these cases dealt with a different wording of the same statute, each describing a crime unto itself, they are parallel to the wording involved here. And they do serve to demonstrate, as Judge Feinberg in Lopez put it, that the statute "was broadly conceived to assure the proper functioning of the postal system," and, as Judge Goldberg in Holley commented, that courts have "often recognized the need for both expansive and realistic judicial interpretation of the federal mail theft statutes". United States v. Lopez, supra, at 398. United States v. Holley, supra, at 638.

■ When taken out of context, the terms "mailbox" or "mail receptacle" would not ordinarily be understood by the man in the street to include a clothespin. But here, we think the word takes on special meaning as a term of art. As we have seen, the clothespin was attached to a mail receptacle, the mailbox. A postal inspector testified that at this residence all outgoing letters were mailed by attaching them to the clothespin and that such a practice is common and that postal carriers are required to pick up such letters. The clothespin was thus intended and used for the delivery or receipt of mail on this mail route, as contemplated by the applicable regulations. Viewed in this light, it is plain, we think, that taking a letter from the grip of the clothespin is taking "from and out of the mail, and mail receptacle," as those statutory terms are invoked in the indictment.

The judgment is affirmed.